2001 WY 83

**BAC, Appellant (Respondent),**

v.

**BLM, Appellee (Respondent).**

No. C–00–7.

Supreme Court of Wyoming.

Sept. 6, 2001.

Ronald G. Pretty, Cheyenne, Wyoming, Representing Appellant. Argument by Mr. Pretty.

Anthony F. Ross of Ross, Ross & Santini, L.L.C., Cheyenne, Wyoming, Representing Appellee. Argument by Mr. Ross.

Before LEHMAN, C.J.; GOLDEN and KITE, JJ.; and DAN SPANGLER, D.J., Ret.

LEHMAN, Chief Justice.

[¶ 1] This case requires that we determine whether procedures used by the district court commissioner and the district court satisfy constitutional and statutory requirements. We decide specifically whether the commissioner acted beyond his statutory authority when he did not allow Appellant BAC (Mother) to introduce certain evidence at the custody hearing. Having determined that the actions of the commissioner and the district court were violative of constitutional and statutory requirements, we reverse and remand.

## ISSUE

[¶ 2] Mother presents this statement of the issue:

Did the Court Commissioner err when it did not allow the introduction of certain evidence[?]

Appellee BLM restates the issue:

Did the procedures utilized by the District Court and the Court Commissioner, in this case, satisfy constitutional and statutory requirements?

## FACTS

[¶ 3] This case began in August of 1997 with the Department of Family Services (DFS) filing a petition to establish paternity and support for the parties' minor child, MJC, and seeking reimbursement for public assistance funds expended on the child's behalf. Genetic tests subsequently filed by the State indicated that BLM (Father) was the biological father of MJC. After several continuances, an informal hearing was set before the commissioner on June 8, 1998, at which the parties stipulated to paternity, a change in the child's birth certificate, and the State's judgment against Father in the sum of $4,199.56 for reimbursement, costs, and fees. Following this development, no representative of the State participated further in the case or attended any hearing. Nor is the State a party to this appeal.

[¶ 4] A subsequent hearing to determine the contested issues of custody, visitation, and child support was set for October 12, 1998. On October 6, 1998, Mother filed a motion to transfer the case from the commissioner to the district court. Father filed an objection to the motion, claiming it was brought only for purposes of delaying the proceeding. The record is silent on any further action or hearing on the motion, but the custody hearing was ultimately held in front of the commissioner on October 12. The hearing began with Father's case in chief but was not completed on that date and was once again continued until December 8, 1998. Mother's counsel filed a motion requesting that Father's tape-recorded testimony be transcribed by the court reporter for purposes of cross-examination at the next hearing. The record does not contain a transcript of this testimony. On November 4, 1998, Mother filed a motion requesting that the district court, pursuant to W.R.C.P. 35, order both her and Father to undergo blood and urine tests for illegal drugs on the grounds that it was alleged at the hearing that she was a user of illegal drugs and Father had admitted under oath that he was a user of illegal drugs. Father objected to the motion. Mother's counsel asked for a fifteen-minute hearing on the motion which was scheduled in front of the commissioner on March 17, 1999. On December 8, 1998, the parties, their respective counsel, and witnesses appeared to continue the hearing begun on October 12. At the time, Mother was incarcerated for motor vehicle offenses and had granted temporary custody of MJC to her sister. At the close of the day's hearing, the commissioner made findings and recommended that Father have temporary custody of MJC pending completion of the custody hearing, which was once again continued until August 10, 1999. The district court entered its order granting temporary custody to Father on December 9, 1998.

[¶ 5] The parties, counsel, and witnesses appeared on August 10, 1999; however, due to lack of time, the hearing was again continued until October 12, 1999, one full year from the initial hearing. The final hearing was held on that date, and all testimony was

completed. The following day, Mother filed an affidavit from Dr. Melissa Thompson stating that she had treated Mother in August of 1998 for an allergic reaction to spider bites which, in her opinion, was consistent with the lesions which had formed on Mother's upper extremities.[1] On October 14, 1999, the commissioner filed his report, proposed findings of fact, and recommendation that Father be granted sole custody of MJC. On October 26, 1999, Mother filed an affidavit from Dr. Karen Phillips stating that she had reviewed urinalysis test results from Mother dated August 5, 1999, taken in the course of Mother's employment and this test was negative for illegal narcotics. Mother filed her objections and supplemental objections to the commissioner's report and recommendation on November 2, 1999. Father responded on November 16. No hearing was held by the district court on the objections. Instead, the district court issued its decision letter on December 8, 1999, in which it summarily rejected the objections and adopted the commissioner's recommendation. Its order establishing paternity, custody, visitation, and child support was filed on the same date. This timely appeal followed.

[¶ 6] The record in this case is primarily comprised of seven unlabeled audiotapes of the hearings before the commissioner, one of which is blank,[2] and a transcription of two tape recordings of the August 10, 1999, hearing. The transcript illustrating evidentiary rulings made by the commissioner was prepared for purposes of this appeal.

## DISCUSSION

[¶ 7] In this opinion, we do not address the case before us on its merits. Consequently, we will not make any judgment as to whether the custody arrangement ordered by the district court ultimately is in the best interests of the minor child. Rather, we address whether the procedures used by the commissioner and the district court in making its determination satisfied certain consti-

tutional and statutory requirements and whether due process was afforded to the parties involved. We conclude that the procedures utilized were inadequate and thus reverse and remand to the district court.

[¶ 8] This court has examined the procedures used by the commissioner and the district court in Laramie County in several cases. *See Harris v. Harris,* 948 P.2d 405 (Wyo.1997); *May v. May,* 945 P.2d 1189 (Wyo.1997); *Gaines v. Doby,* 773 P.2d 442 (Wyo.1989); *K.C. v. State,* 771 P.2d 774 (Wyo.1989); *Foster v. Foster,* 768 P.2d 1038 (Wyo.1989). In each of these cases, we have emphasized that our statutory and constitutional system recognizes only a limited role for a commissioner appointed by the district court. As early as 1912, this court recognized the limited nature of a court commissioner's powers: "The commissioner as to matters pending in the court is a subordinate officer of the court. He is not a District Judge who alone possesses the power to preside over a District Court. There can be no such court in the absence of a qualified judge *de facto* or *de jure.* The Court Commissioner is neither." *Huhn v. Quinn,* 21 Wyo. 51, 60–61, 128 P. 514, 516 (1912); *see also May,* 945 P.2d at 1192.

### *Evidentiary Rulings*

[¶ 9] Applying this reasoning to evidentiary rulings by the commissioner, we held in *May* that, while Wyo. Stat. Ann. § 5–3–307(a)(v) is clear and unambiguous in authorizing a commissioner to *"take evidence* and make findings, and report the same to the district court," the statutory subsection does not confer upon the commissioner the authority to exclude evidence or to make legal rulings determining the admissibility of evidence. *Id.* at 1192. We expressly held that the authority to make legal rulings on the evidence is vested solely in the district court.

[¶ 10] In hearing the instant case, the commissioner made multiple evidentiary rulings limiting or excluding the admission of

---

1. Multiple witnesses' testimony at each hearing concerned these lesions. The implication put forward through Father and his witnesses was that they were caused by the use of illegal narcotics.

2. Audiotape "DCC 113".

testimony of Mother and Mother's witnesses on various grounds throughout the proceedings in clear contravention of our holding in *May*. We reemphasize that, when acting under the authority granted by § 5–3–307(a)(v), a commissioner does not have the power to exclude evidence or make evidentiary rulings determining the admissibility of evidence. "The differentiation is between adjunct fact finding and plenary judicial responsibility." *Id.* (quoting *Foster*, 768 P.2d at 1042 (Urbigkit, J., specially concurring)).

[¶ 11]   We conclude that the applicable subsection contemplates that a hearing before the commissioner more closely resembles a deposition procedurally rather than a trial in regard to the admissibility of evidence.  A party may make evidentiary objections, but the commissioner may not exclude the offered evidence from the hearing.  Unquestionably, the district court is the ultimate fact finder and therefore must be able to independently review all evidence and findings in making its decision, with such review being indicated on the record.  In this case, the commissioner clearly exceeded his authority by making evidentiary rulings.

[¶ 12]   A further rationale for the remand in *May* came as a result of the district court's order stating that its findings were made based upon "the Commissioner's summary of evidence and the proposed findings and recommendations, the basis for such proposed findings and recommendations, the objections of the parties, if any, [and] *the pertinent parts of the evidence*." *Id.* We found this review inadequate because, while the commissioner's report was factually detailed, it failed to inform the district court that certain evidence had been excluded from consideration.  *Id.* Likewise, in the case before us, the district court's order uses the exact same language indicating its findings were made upon an identical basis, and once again the commissioner's report fails to disclose his evidentiary rulings.

[¶ 13]   We concluded in *May* that we were unable to discern whether the district court relied upon the commissioner's determination that the father's evidence was inadmissible or whether it reviewed the excluded evidence and made an independent ruling on its admissibility.   We thus remanded the case to the district court to make those determinations.   In this case, the district court's decision letter appears to broadly imply that it has reviewed the commissioner's evidentiary rulings.[3]   However, when the commissioner exceeds his statutory and constitutional authority by making evidentiary rulings in the first instance, we cannot say that a cursory review by the district court without analysis or reference to any specific evidentiary ruling is enough to ratify the commissioner's acts as its own.

### Nondelegable Duties/Due Process

[¶ 14]   Of greater import than our holdings on the evidentiary issues associated with the use of the commissioner in domestic relations cases are this court's express holdings that a district court's powers to hear, try, or determine a case are nondelegable to a commissioner.  *K.C.*, 771 P.2d at 778; *Foster*, 768 P.2d 1038; *Huhn*, 21 Wyo. 51, 128 P. 514; *see also Holm v. Smilowitz*, 840 P.2d 157, 166 (Utah App.1992); *C.C.C. v. District Court for Fourth Judicial Dist.*, 188 Colo. 437, 535 P.2d 1117 (1975); *State ex rel. Smith v. Starke Circuit Court*, 275 Ind. 483, 417 N.E.2d 1115, 1121–23 (1981).  As the Utah Appellate Court noted in *Holm:*

> Commissioners have no accountability to the public, but only to the judges for whom they work.   The people have a right to have their cases and controversies ultimately decided by ... judges who have been vested with judicial power by the constitution.   Anything less is a clear violation of the Utah constitution and Utah law.

840 P.2d at 168.

[¶ 15]   This statement is equally applicable under Wyoming law, and to that

---

**3.**   The district court in its decision letter stated that there is no evidence in the record that the commissioner improperly admitted or excluded any evidence.   We have already determined that the commissioner has no authority to exclude evidence.   Further, after reviewing the transcripts and portions of the tape recordings, we question many of the commissioner's specific evidentiary rulings.

end this court has often stated that the district court must review the evidence and findings and make its decision based upon the basis of that review. Further, the record must clearly indicate to this court that the district court *independently* reviewed the evidence and findings to reach its informed decision. This requirement is especially necessary in child custody cases because "[t]he right to associate with one's immediate family is a fundamental liberty protected by the state and federal constitutions." *Hall v. Hall*, 708 P.2d 416, 421 (Wyo.1985) (quoting *DS v. Department of Public Assistance and Social Services*, 607 P.2d 911, 918 (Wyo.1980)). It is firmly established in our jurisprudence that "[r]esolution of which parent shall have custody necessarily implicates the fundamental right of family association. Accordingly, a court must afford a parent notice and a meaningful opportunity to be heard before it can deny the parent custody of his or her children." *Id.* While this court has reluctantly allowed the use of a commissioner in some domestic relations matters, we herein reiterate that district courts in Wyoming have no authority to abdicate their decision-making responsibilities on these fundamental issues to others.

[¶ 16] Therefore, we again expressly hold that, if the district court does not conduct the initial hearing of a child custody case on its merits, at an absolute minimum, full, complete, and independent review of the entire record by the district court is mandated and must be demonstrated on the record. This result is necessary both to vindicate a parent's rights to associate with his or her children and to ensure that a district judge ultimately determines those custody arrangements that are in the best interests of our state's minor children.

[¶ 17] In the instant case, we cannot conclude on the record before us that Mother received a meaningful opportunity to be heard by the district court on the issues of child custody and visitation, nor can we determine that the district court *independently* determined that the custody arrangement

recommended by the commissioner was in the best interests of the minor child. The district court's decision letter is strongly indicative of an appellate-type review of the parties' objections to the commissioner's report, findings, and evidentiary rulings rather than the requisite full review and first-instance determination of the custody arrangement in the best interests of MJC. It is not a sufficient fulfillment of the district court's nondelegable duties for it merely to determine that a party's objections to a commissioner's recommendation lack merit. Due process requires that the district court go further and affirmatively determine the custody decision on its merits using the factors outlined in Wyo. Stat. Ann. § 20–2–201 (LexisNexis 2001) and then that its independent decision-making and rationale be made clear to this court on the record.

[¶ 18] We have stated that in most instances the district court will require a transcript of the evidentiary hearing in order to conduct a meaningful review of the case. *Foster*, 768 P.2d at 1042; *Gaines*, 773 P.2d at 445. We note that none was provided here. Although we are reluctant to require parents, some of whom are impoverished, to incur transcription costs simply to ensure their custody case is decided by the district court in their judicial district, we cannot say that untranscribed audiotapes and a commissioner's report, no matter how factually detailed, are an adequate substitute.[4] Our comparison of the commissioner's report to the transcript indicates that the report often strips testimony of its necessary context and exact phraseology and may thus give a false impression of events. To illustrate: in the case before us, Mother's mother, when questioned by counsel regarding Mother's housekeeping abilities, described an incident that occurred once when she was visiting her daughter. She testified that, although bowls were present on the table, MJC had taken his dry cereal out of the bowl and was lining the pieces up on the table and eating them individually. When asked why the cereal was not in a bowl, MJC stated in typical child-like fashion,

4. We are concerned that a transcript requirement may raise issues relative to an indigent party's right to equal access to the courts.

"I didn't want it in a bowl." In reporting this testimony, the commissioner synthesized the incident as "[o]ne time she saw [MJC] eating dry cereal off the table at natural mother's." Although perhaps technically accurate, this is but one example of the manner in which evidence filtered through the commissioner is perhaps not as objectively neutral as a transcript of the proceedings would be. Statements in the district court's decision letter and order, coupled with the lack of a written transcript of the hearings, and the state of the audiotapes leave this court with a significant concern that the district court may have unduly relied upon the commissioner's report in adopting his recommendation.

## CONCLUSION

[¶ 19] We have determined that the commissioner exceeded his authority in making evidentiary rulings that were not adequately ratified by the district court's review. We have further held that, for all the foregoing reasons, the procedures utilized by the commissioner and the district court were insufficient to afford Mother due process. Therefore, we reverse and remand to the district court to review the complete record in this case, conduct a hearing, at a minimum, on the parties' objections, and ultimately determine and place on the record the custody arrangement in the best interests of the minor child, MJC.[5] Over three years have elapsed since this custody proceeding began. Although this court is fully cognizant of the demands on the district courts' dockets, we direct that this matter be given priority treatment and the judicial process no longer be allowed to withhold from this child the certainty and security of a final proper custody order.

5. We also note that it appears from the record that no guardian ad litem was appointed for MJC as seems required by Wyo. Stat. Ann. § 14–2–107 (LexisNexis 2001) on these facts. We presume upon remand that this oversight will be remedied.