2004-NMCA-036

87 P.3d 1067

**Darlene LUJAN, on behalf of her son, Richard O. LUJAN, a minor, Petitioner–Appellee,**

v.

**Julie A. CASADOS–LUJAN, Respondent–Appellant,**

and

**James Lujan, Intervenor–Appellant.**

No. 22,984.

Court of Appeals of New Mexico.

Oct. 28, 2003.

Certiorari Denied, No. 28,384, March 15, 2004.

Michael Schwarz, Santa Fe, for Appellants.

Bryan P. Biedscheid, Michael T. Pottow, Catron, Catron & Sawtell, P.A., Santa Fe, for Appellee.

*OPINION*

PICKARD, J.

{1} This case is one of several of which we are aware that raise challenges to New Mexico's system of adjudicating domestic violence cases. Although we uphold the adjudication under the facts and circumstances of this appeal, we express our concerns about some of the allegations Respondent makes on appeal. Respondent contends that (1) a parent cannot act on behalf of her child in filing a petition for an order of protection, (2) the evidence in this case was insufficient and does not amount to domestic violence as a matter of law, (3) the system of using special commissioners and then judges, who do not independently review all the evidence heard by the special commissioners and who do not review respondents' written objections to the special commissioners' recommendations, is a violation of due process and an improper delegation of judicial functions, and (4) the special commissioner was biased. We affirm.

**FACTS AND PROCEEDINGS**

{2} On February 7, 2002, Darlene Lujan filed a petition for an order of protection from domestic abuse on behalf of her fourteen-year-old son (Child) against her ex-husband's new wife (Respondent). The petition alleged that the acts of domestic abuse consisted of "continuous verbal abuse and belittlement," specifically that Respondent said things like:

1) You're a f[——]ing pig.

2) You're f[——]ing worthless

3) You're no good for nothing

4) lazy piece of sh[—]

5) You're a f[——]ing slob.

6) You're a reject.

7) You can't do anything right.

8) Your mom's nothing but a f[——]ing bi[——]

9) Your [sic] a son of a bi[——]!

10) Little a[—]hole

11) Your [sic] a dumb a[—].

12) Your [sic] a retarded f[——].

The petition alleged that Darlene Lujan feared physical abuse from Respondent. At the later hearing, Child affirmed that Respondent had said each and every one of these things to him. He testified that he too feared physical abuse from Respondent inasmuch as she was always bragging about hitting people, and he was fearful that she would hit him. Further, he explained that he was doing poorly in school because he could not concentrate because of the abuse. A psychologist testified that Child showed moderate symptoms of abuse.

{3} On February 7 (filed February 8), 2003, Judge Sanchez signed a temporary order of protection and ordered Respondent to appear on Thursday, February 21, for a hearing on whether an extended order would be entered. Child's father filed a motion to intervene. Respondent filed a motion to dismiss, alleging that the petition failed to state a case for domestic abuse and that Darlene Lujan was prohibited from acting on behalf of Child because she was not an attorney.

{4} The matter was heard before a special commissioner for three hours on February 21, ending after 5:00 p.m. During the hearing, the special commissioner permitted the father's intervention, but denied Respondent's motion to dismiss. At the conclusion of the hearing, the special commissioner announced that she would issue an order of protection and that the parties could pick it up the next day or have it faxed to them. Respondent asked whether she would have an opportunity to file objections and was told that there was no provision in the domestic violence special commissioner rule for a ten-day period for filing objections because in ten days "everyone would be dead." Although the special commissioner had told the parties the order would be ready the next day, the order was not signed by Judge Vigil until 4:00 p.m. the following Monday.

## DISCUSSION

### 1. Parent Representing Child

{5} Respondent contends that the proceedings should have been dismissed because a parent cannot represent a child in a domestic abuse matter. Her arguments reflect the understanding that Child was the petitioner and Darlene Lujan acted on Child's behalf, and we analyze the issues on this basis.

{6} Respondent relies on two lines of authority. In the first line, our cases hold that a parent cannot represent a child in a medical malpractice action because to do so would constitute the unauthorized practice of law. *Chisholm v. Rueckhaus*, 1997–NMCA–112, ¶¶ 4–5, 124 N.M. 255, 948 P.2d 707. In the second line, our cases hold that a trial court does not abuse its discretion when it disqualifies an attorney from representing his current wife in a claim for child support because the best interests of the children are not fostered by allowing representation that could alienate the other parent and undermine his relationship with his children. *Sanders v. Rosenberg*, 1997–NMSC–002, ¶¶ 9–17, 122 N.M. 692, 930 P.2d 1144.

{7} Neither of these lines of authority is persuasive here. First, our legislature has recognized that many people who are the victims of domestic violence are unable to obtain counsel and has mandated that simplified forms be available for such people to use. NMSA 1978, § 40–13–3 (1993). Our Supreme Court has agreed with the legislature and has approved a whole set of simplified forms to be used for these purposes. Forms 4–961 to –973 NMRA 2003; *see Alexander v. Delgado*, 84 N.M. 717, 718, 507 P.2d 778, 779 (1973) (indicating that despite separation of powers issues, the Supreme Court does not have a quarrel with procedural statutes that are reasonable and workable and that the Court has not seen fit to change by rule).

{8} Thus, the problem of domestic violence and its attempted solution by legal intervention is not comparable to the problem of torts being committed against people and legal redress therefor, as was the issue in *Chisholm*. In the latter situation, there is nothing to suggest that legal representation is difficult to arrange, and there is much to suggest that legal proceedings for redress might be complicated. Legal representation in tort cases is typically paid for by contin-

gency fee arrangements; legal representation in domestic violence cases must be paid by the people involved, who are often of limited means. The issues in tort cases are often complex, involving extensive discovery, evidentiary issues, and myriad rules of law; the issues in domestic violence cases are factual, usually simple, and often time-sensitive. For these reasons, we agree with the legislature and Supreme Court, and we do not deem it advisable to import the general rules concerning the unauthorized practice of law into the specific area of domestic violence.

{9} Second, we do not believe that *Sanders* requires a reversal here. The procedural posture of *Sanders* was the exact opposite of the procedural posture of this case, leading us to the conclusion that the standard of review is the determining factor. In *Sanders*, a trial court perceived that permitting the representation by a family member would be contrary to the best interests of the children because of the potential for alienation and undermining the parent-child relationship. *Sanders*, 1997–NMSC–002, ¶ 14, 122 N.M. 692, 930 P.2d 1144. The Supreme Court upheld the trial court's ruling, holding that the trial court had "broad discretion" and "broad authority" in the matter. *Id.* ¶¶ 7, 10.

■ {10} The fact that a decision is upheld as not an abuse of discretion does not mean that a different, although comparable, decision under different facts is erroneous. *See Cadle Co. v. Phillips,* 120 N.M. 748, 750, 906 P.2d 739, 741 (Ct.App.1995). Contrary to the *Sanders* case, in which the trial court perceived harm to the parent-child relationship that would outweigh the general rule permitting people to choose their own counsel, the trial court in this case perceived that harm and potential harm to Child outweighed the general rule requiring legal representation. Under these circumstances, we cannot say that discretion was abused. However, nothing we say herein would prohibit a trial court, which perceived that the motivation for a domestic abuse case was to further the parent's interest in alienating the children from the other parent, from requiring counsel in such a situation.

{11} Finally, although the argument was not raised, we note that it appears to us that the domestic violence statute would allow Darlene Lujan to file the petition for an order of protection in her own right. The statute defines domestic abuse as including "harm or threatened harm to children as set forth in the paragraphs of this subsection[.]" NMSA 1978, § 40–13–2(C)(11) (1995). A logical reading of this provision in the context of the statute suggests that a household member may seek an order of protection in which the adult is a petitioner seeking an order to prevent or stop harm to children in the home. *See Katz v. N.M. Dep't of Human Servs.,* 95 N.M. 530, 534, 624 P.2d 39, 43 (1981) (holding that a statute must be construed so that no part of the statute is rendered surplusage or superfluous). This interpretation would parallel the statutes of many other states, which expressly provide that a household member may file petition alleging abuse to a minor. *See, e.g.,* Ariz. Rev.Stat. Ann. § 13–3602 (Supp.1991); Colo. Rev.Stat. Ann. § 14–4–102 (2003); 750 Ill. Comp. Stat. 60/201 (1993); N.Y. Fam. Ct. Act § 822 (1980); Tex. Fam.Code Ann. § 82.002 (2001). Since this alternative argument was not raised in this case, we do not expressly adopt it and leave the implications of this interpretation for another day.

## 2. Sufficiency of the Evidence

■ {12} Respondent contends that even accepting the allegations of the petition as true, they do not amount to domestic abuse under the plain language of the statutory definition. We disagree.

{13} Section 40–13–2(C) defines domestic abuse as:

any incident by a household member against another household member resulting in:

(1) physical harm;

(2) severe emotional distress;

(3) bodily injury or assault;

(4) a threat causing imminent fear of bodily injury by any household member;

(5) criminal trespass;

(6) criminal damage to property;

(7) repeatedly driving by a residence or work place;

(8) telephone harassment;

(9) stalking;

(10) harassment; or

(11) harm or threatened harm to children as set forth in the paragraphs of this subsection[.]

We believe that the facts of this case, taken as a whole, show repeated incidents that come within the terms of the statute.

{14} It is not unimportant that the child at issue is a sensitive teenager. Contrary to Respondent's contention that she merely used bad language of the sort that "litters the silver screen" and is frequent on television, bumper stickers, and playgrounds, our view of the language is that it could be interpreted as symbolizing an aggressiveness and threat of physical and emotional domination that comes well within the provisions of Subsections (C)(2), (4) and (10), or so the trial court could reasonably have found. In addition to the language itself, we must bear in mind its context. The language was used in the context of a person bragging about her physical domination of other people to a child who was obviously and visibly threatened by it.

{15} When reviewing the sufficiency of the evidence, we view the facts in the light most favorable to the decision below. *Pub. Serv. Co. v. Diamond D Constr. Co.*, 2001–NMCA–082, ¶ 16, 131 N.M. 100, 33 P.3d 651. We resolve all conflicts and, importantly, indulge in all inferences to support that decision. *Id.* Although Respondent's argument recognizes this standard, we do not believe that her evaluation of the evidence is consistent with it. Instead, it attempts to minimize what she said and its impact on Child. When reviewed in accordance with the standard of review, the evidence does make out a case of domestic abuse.

### 3. Impermissible Delegation of Judicial Authority and Due Process

{16} Respondent points to the serious federal disabilities attendant upon the filing of an order of protection, alleging in reliance on "42 U.S.C. §§ 3796, et. seq.; 42 U.S.C.

§§ 10401 et. seq." that an "individual is listed on a national registry, which in turn may affect that person's future employment opportunities" and result in "that person [being] no longer [able to] bear arms." We note that it is 18 U.S.C. § 922(g)(8) and (9) (2000) that potentially impacts the right to bear arms and that the special commissioner told Respondent that she would not be subject to firearms restrictions. Respondent's brief in chief then describes how she perceives New Mexico's domestic violence procedures to work:

The process works like this: A claimant comes to court and fills out a petition. The petition is then reviewed by the hearing officer, who in turn makes a recommendation to the district court judge to sign off on a temporary *ex parte* order of protection. The temporary order of protection is literally walked across the hallway to the district judge's office and handed to the district judge. The page for signature is stick noted so that the judge knows w[h]ere to sign. The judge just signs it. A hearing is then scheduled.

At the hearing, the hearing officer takes sworn testimony. The hearing officer rules on objections. At the end of the hearing, the hearing officer writes up recommendations. These recommendations are presented *ex parte* to the district court judge for approval. There is no opportunity to voice any objections to the recommendations proposed by the hearing officer. The judge does not listen to the hearing tapes. The order is walked over to the district court judge with the signature page stick noted. The judge automatically signs it.

{17} Initially, we address Respondent's characterization of the special commissioner system. There are no record proper, transcript, or exhibit cites in this recitation. There is no evidence of any stick notes on any of the orders in the record proper. Our recitation of the procedures at the beginning of this opinion indicates that no hearing officer was involved in any recommendations on the initial temporary order, which restrained Respondent from contact with Child from February 8 to the February 21 hearing. Af-

ter the hearing with the special commissioner, there was ample time for the district judge signing the order from which appeal was taken to review the tapes from the hearing held the week before.

{18} We acknowledge that the special commissioner told Respondent that there was no time frame for filing written objections under the rule providing for domestic violence special commissioners. *Compare* Rule 1–053.1 NMRA 2003 (providing that the commissioner conducts hearings on the merits of petitions and prepares recommendations to the district court, and further providing that "[a]ll orders must be signed by a district judge before the recommendations of a special commissioner become effective"), *with* Rule 1–053 NMRA 2003 (providing the general rule for special masters and providing a ten-day objection period to the report of a special master). However, Respondent did not press the matter further by suggesting any alternative to the ten-day period for written objections and did not make a record on whether the judge would listen to the tapes, read the tape logs, or otherwise inform himself or herself of Respondent's positions.

{19} Although we ultimately rule that the record does not support Respondent's contentions, in view of the fact that this is not the only case that will raise issues of the sort raised here, we take this opportunity to comment on a concern that became evident in our review of this case. We have been unable to find a case that would approve of a procedure such as Respondent describes, and Petitioner does not cite to any such case. In contrast, Respondent relies on *BAC v. BLM,* 30 P.3d 573, 576–79 (Wyo.2001), which holds it to be a violation of the constitutional obligations of a district judge to endow a special commissioner with the power to make rulings on evidence and rule on the merits of controversies between district court litigants. The Wyoming case is supported by cases from other jurisdictions to a like effect. *See Holm v. Smilowitz,* 840 P.2d 157, 166–168 (Utah Ct.App.1992), and cases cited therein. Due to our well-established New Mexico procedures on appeal, we cannot say that we would rule, as the Wyoming court did, that normally only a transcription of the hearing

before the special commissioner will insure that the district judge plays his or her appropriate role. *See BAC,* 30 P.3d at 578. Nonetheless, we express our grave concern if, as alleged by Respondent, district judges are presented with "stick noted orders" that they "automatically" sign.

■ {20} Notwithstanding the above concern, we need not definitively address it in this case. Bedrock principles of appellate law dictate that matters not of record present no issue for review, that there is a presumption of regularity in the proceedings below, and that error must be clearly demonstrated. *See O'Neel v. USAA Ins. Co.,* 2002–NMCA–028, ¶ 27, 131 N.M. 630, 41 P.3d 356; *Reeves v. Wimberly,* 107 N.M. 231, 236, 755 P.2d 75, 80 (Ct.App.1988); *City of Albuquerque v. Westland Dev. Co.,* 121 N.M. 144, 155, 909 P.2d 25, 36 (Ct.App.1995).

{21} The order of protection here was signed by the district judge, and nothing in the record shows that the judge did not inform herself as to everything she needed to know in order to understand and intelligently rule on Respondent's contentions. There is nothing in the record substantiating Respondent's contentions on appeal. For these reasons, we are not called upon in this case to address the constitutional issues Respondent raises.

### 4. Bias of Special Commissioner

■ {22} Respondent finally contends that certain comments by the special commissioner during an agree-to closed meeting with Child suggested bias and partiality, specifically that the special commissioner suggested answers to Child and acted as an advocate instead of a neutral decision maker. We have reviewed the tape and conclude that there was no overstepping of the proper boundaries for an impartial decision maker. We understand the special commissioner's comments as wanting to make Child feel comfortable and understand that the court process was there to help him. So, too, her comment to Child that Respondent's use of language is reflective of a limited vocabulary appears to us to be an attempt to soften the blow of Respondent's harsh words, rather than an effort to blame Respondent for abus-

ing him with her repeated aggressive foul language.

**PRO BONO SERVICE**

{23} As a final note, we wish to express our appreciation to Bryan Biedsheid and Michael Pottow. These attorneys are volunteers on this Court's list of attorneys who have agreed to represent on a pro bono basis people who would otherwise appear in this Court pro se or in some cases not appear at all. These attorneys perform a valuable service in the tradition of the most honorable aspects of the profession of law.

**CONCLUSION**

{24} The order of protection is affirmed.

{25} **IT IS SO ORDERED.**

WECHSLER, C.J. and IRA ROBINSON, J., concur.