This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-37649**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellant,

v.

**LUIS A. VARGAS a/k/a LUIS VARGAS,**

      Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Jacqueline D. Flores, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Victoria Wilson, Assistant Attorney General
Albuquerque, NM

for Appellant

Rothstein Donatelli LLP
Marc M. Lowry
Albuquerque, NM

for Appellee

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** The State sought to introduce evidence of the analysis of DNA samples taken from the alleged child victim in this case. The district court excluded that evidence on the basis that the samples contained an insufficient quantity of DNA for analysis and demonstrated little more than that the evidence was inconclusive. The State now appeals. We affirm.

**BACKGROUND**

**{2}** Defendant is charged with two counts of criminal sexual penetration in the first degree, contrary to NMSA 1978, Section 30-9-11(D) (2009), two counts of criminal sexual contact of a minor in the second degree, contrary to NMSA 1978, Section 30-9-13(B) (2003), and battery, contrary to NMSA 1978, Section 30-3-4 (1963). These charges stem from an incident that allegedly occurred during a counseling session between Defendant, who is a psychiatrist, and a three-year old patient. Following the session, the child allegedly told her grandmother that Defendant had touched her genitals and spat into her mouth.

**{3}** The child was examined by a Sexual Assault Nurse Examiner later that day, who collected pieces of evidence, including clothing and swabs for DNA analysis. The swabs were sent to two laboratories for testing. The initial DNA analysis was performed at the Albuquerque Police Department (APD) Crime Laboratory. Of the samples collected, APD Crime Laboratory found that there was male DNA on four of the samples: a vaginal swab, an oral swab, an oral lip swab, and a swab collected from a cutting of the child's shorts. With the exception of the sample collected from the shorts, none of the samples contained a sufficient quantity of DNA to qualify for further analysis under APD's Crime Laboratory guidelines, which require a minimum of four out of twenty-four loci to merit further testing. The testing of the sample taken from the shorts revealed a mixture of two profiles with the major contributor being female, from which the child could not be excluded. The minor profile could not be interpreted because it was of insufficient quantity, and the forensic scientist who performed the analysis could not say whether the minor profile was male or might have resulted from contamination.

**{4}** The samples were then sent to the Department of Public Safety (DPS) Forensic Laboratories for analysis. Under DPS minimum threshold guidelines for analysis, which recommend a minimum of eight of twenty-four loci to merit further testing, only the oral lip swab qualified for analysis. The results stated that male DNA was identified, but that it was not in a sufficient quantity for further testing or comparison to identify a particular individual. Because the remaining three samples did not contain at least eight identifiable loci, they were not analyzed by DPS. The DPS analyst testified that, on the basis of DPS testing standards, she could not qualify the DNA found on the shorts as male.

**{5}** Defendant moved for exclusion of the DNA evidence under Rules 11-702, 11-401, and 11-403 NMRA, arguing that it was inadmissible because the samples cannot be said to reliably contain male DNA. The district court held a day-long hearing on Defendant's motion, at which three experts for the State and one for Defendant testified. Because the DNA evidence was inconclusive, the district court granted Defendant's motion to exclude the evidence on the grounds that it had limited relevance. The district court also found that any relevancy the evidence may have had was outweighed by the waste of time, confusion of the issues, and the prejudicial impact such inconclusive evidence may have on the jury. The State appeals pretrial pursuant to NMSA 1978, Section 39-3-3(B) (1972).

**DISCUSSION**

**I.       Admission of the DNA Evidence**

**{6}**      The State argues that the district court erred in rejecting the DNA evidence under Rule 11-401 and under Rule 11-403. We address each argument in turn.

**{7}**      The Court reviews the admission of scientific evidence under an abuse of discretion standard. *State v. Torres*, 1999-NMSC-010, ¶ 27, 127 N.M. 20, 976 P.2d 20. "[A]buse of discretion . . . can be found when the trial judge's action was obviously erroneous, arbitrary, or unwarranted." *State v. Alberico*, 1993-NMSC-047, ¶ 63, 116 N.M. 156, 861 P.2d 192. "Abuse of discretion has also been defined as being clearly against the logic and effect of the facts and circumstances before the court." *Id.* The burden to establish an abuse of discretion rests in this case with the State. *See Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 40, 146 N.M. 237, 208 P.3d 457.

**A.       Rule 11-401**

**{8}**      The State argues that the DNA evidence was relevant under Rule 11-401 because it would be helpful to the jury's resolution of the child's accusations. The State claims that "the trial court apparently concluded that the lack of testing to compare the DNA evidence to determine whether it matches Defendant, . . . renders the DNA evidence irrelevant or low in probative value." This summation mischaracterizes the district court's ruling. The district court did not exclude the evidence because it could not be tested and compared *to Defendant*; rather, the district court concluded that the evidence was not admissible because the results from the samples could not be interpreted and were inconclusive as to whether the samples contained male DNA. The district court clearly specified this as the basis for its ruling in its order, and it is on the basis of that ruling that we analyze the court's decision.

**{9}**      Following the lengthy evidentiary hearing, the district court determined that, given the inconclusive results of the State's DNA testing, the evidence had little relevance to the proceedings. The district court found that of the two DNA analyses conducted by the State, although the APD Crime Laboratory "determined that there was possibly male DNA in the preliminary stages of analysis, further analysis was inconclusive and . . . under DPS protocols the APD analysis would not have met minimum thresholds for any conclusion that there was male DNA." While the APD Crime Laboratory determined that there was male DNA present on the sample collected from the child's shorts, that sample was of insufficient quantity to allow for further testing and the analyst could not rule out contamination. The DPS laboratory analyst could not say whether the sample collected from the shorts contained male DNA at all. As for the oral lip swabs, the district court found that although male DNA was indicated in the DPS analysis, "the quantities were so insufficient that no interpretations or comparisons could be made." The district court noted that the State's third expert "agreed with the conclusion that the DPS results were not reliable enough for any conclusions either for inclusion or exclusion." Thus, the DNA experts offered by the State presented differing conclusions

as to whether male DNA was present in the samples, though they agreed that the DNA was in an insufficient quantity for interpretation or comparison. On that basis, the district court concluded that "[t]he testimony of the State's experts demonstrate that very little can be determined from the DNA evidence collected in this case other than the evidence is inconclusive. Such evidence has little relevance to the facts of this case."

**{10}** Under Rule 11-401, "[e]vidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action." "Whatever naturally and logically tends to establish a fact" is considered to be relevant. *McNeill v. Burlington Res. Oil & Gas Co.*, 2008-NMSC-022, ¶ 14, 143 N.M. 740, 182 P.3d 121 (alteration, internal quotation marks and citation omitted). "Relevance does not exist in a vacuum; instead, it is the logical relationship between evidence and a proposition in issue that the party seeks to prove." *State v. Duncan*, 1990-NMCA-063, ¶ 18, 113 N.M. 637, 830 P.2d 554.

**{11}** In this case, given the inconsistency in the DNA analyses as to whether male DNA was present, there is little to no logical relationship between the evidence and the proposition it purports to prove—that a male came into contact with the area of the child's shorts or mouth. *See id.* Consequently, the DNA evidence cannot be said to corroborate the child's description of the alleged sexual contact or make more or less probable that the child's claim was credible, as the State argues. We hold that the district court did not abuse its discretion in concluding that the evidence has little relevance to the facts of this case.

## B.    Rule 11-403

**{12}** The district court also found that the DNA evidence was inadmissible under Rule 11-403 because "any relevancy the evidence may have is outweighed by the waste of time in having multiple experts testify to inclusive results, confusion of the issues, and the prejudicial impact such inclusive evidence may have on the jury." Rule 11-403 states that a court may exclude relevant evidence where it finds that introduction of the evidence would result in confusing the issues, wasting time, or unfair prejudice. These determinations are fact-sensitive, and "much leeway is given trial judges who must fairly weigh probative value against probable dangers." *State v. Bailey*, 2017-NMSC-001, ¶ 16, 386 P.3d 1007 (internal quotation marks and citation omitted). Accordingly, this Court has recognized that "the counterbalances to relevant evidence under Rule 11-403 are left to the broad discretion of the district court." *State v. Guerra*, 2012-NMSC-014, ¶ 36, 278 P.3d 1031.

**{13}** In *Guerra¸* the defendant was charged with first degree murder for stabbing the victim thirty-one times, resulting in her death. *Id.* ¶¶ 1, 10. The defendant, for purposes of showing her lack of intent, proposed expert testimony that the victim's wounds were not immediately fatal. *See id.* ¶ 35. The district court in that case found that the evidence had little, if any, probative value because the fact that the victim was briefly alive before her discovery by law enforcement shed little light on the defendant's state

of mind. *Id.* ¶ 37. The Court affirmed the district court's ruling that the evidence was "likely to confuse the issues or mislead the jury" given its little probative value. *Id.* ¶ 38.

**{14}** Similarly, in this case, the inconclusive evidence of potential male DNA on the samples obtained from the child has limited probative value and, as noted above, would require a significant presentation of expert testimony as to DNA testing methods, the threshold quantities required to justify additional DNA testing, the testing standards that apply to two different laboratories, lengthy explanations of the various methods by which the laboratories obtained their inconclusive results, as well as any proposed rebuttal testimony by defense experts. The evidentiary hearing in this matter required the testimony of four DNA experts, including that of Defendant's proposed expert. Given the risk of confusion of the issues and waste of time introduction of the DNA evidence might engender, we cannot say that the district court abused its discretion in excluding that evidence.

**{15}** The State argues that *State v. Sena*, 2018-NMCA-037, 419 P.3d 1240, *aff'd in part, rev'd in part*, 2020-NMSC-011, 470 P.3d 227, supports its position that the DNA evidence should be admitted. In *Sena*, the district court admitted testimony regarding DNA results from swabs taken from the victim's thigh following a sexual assault. *Id.* ¶ 50. "Human male DNA was detected on one of the thigh swabs, but in insufficient amounts to allow for any further DNA testing." *Id.* This Court affirmed the district court, holding that the evidence was "probative because it could assist the jury in choosing between the different theories presented regarding the events of that night":

> If the jury were to find the DNA evidence persuasive, it may find the [s]tate's theory that [the d]efendant committed sexual offenses against [the v]ictim to be more probable. The absence of qualifiable DNA, however, weighs in favor of [the d]efendant's theory that although he was in the home, he did not commit the sexual offenses.

*Id.* ¶ 53.

**{16}** A key difference between *Sena* and the case at bar is that DNA analysis in this case was inconclusive regarding the presence of male DNA; thus, the evidence here was inherently less probative than the evidence presented in *Sena*. Further, in contrast to the narrow presentation of the evidence in *Sena*, the DNA evidence in this case, as discussed above, would require presentations by multiple experts testifying as to the inconclusive nature of that evidence. *See id.* ¶ 54. In other words, the evidence in this case had the potential to become a wide-ranging exploration of DNA testing standards and how they differ between laboratories, rather than a narrowly tailored presentation of a credible, albeit minimally conclusive, DNA result, as it was in *Sena*. Given these distinctions, we are not persuaded that the district court erred in reaching a different conclusion here. *See Lujan ex rel. Lujan v. Casados-Lujan*, 2004-NMCA-036, ¶ 10, 135 N.M. 285, 87 P.3d 1067 ("The fact that a decision is upheld as not an abuse of discretion does not mean that a different, although comparable, decision under different facts is erroneous.").

**{17}** The State has not shown that the district court abused its discretion in this ruling, and for all of these reasons, we affirm the decision of the district court to exclude the DNA testimony in this case.

## II.   Whether a *Daubert/Alberico* Hearing Was Necessary

**{18}** The State also asserts that the district court should have held a *Daubert* hearing with respect to admission of the DNA evidence. The State argues, "[h]ere, in granting Defendant's motion to exclude all DNA evidence, the [district] court inaccurately described the testimony as establishing that the testing was not reliable."

**{19}** Rule 11-702, governing the admission of expert testimony, states that

> [a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

The New Mexico Supreme Court has thus required three prerequisites for the admission of expert testimony: first, the expert must be qualified; second, the evidence provided by the expert must assist the trier of fact; third, an expert may testify only as to "scientific, technical or other specialized knowledge." *Alberico*, 1993-NMSC-047, ¶¶ 43-45 (internal quotation marks and citation omitted). All three of these conditions must be met in order for expert testimony to be admissible. *Id.* ¶ 43. The second consideration "is primarily one of relevance." *State v. Anderson*, 1994-NMSC-089, ¶ 14, 118 N.M. 284, 881 P.2d 29.

**{20}** The district court found, and this Court agrees, that the DNA testimony proposed by the State was not sufficiently relevant to justify admission. The district court's order reveals that the court did, in fact, conduct a hearing and, on the basis of that hearing, found that the DNA evidence was of little relevance. The evidence, therefore, fails to satisfy the second prerequisite for the admission of expert testimony outlined by *Alberico* and *Daubert*. As a result, we find that no further hearing was necessary on the question of the reliability of the scientific method employed by the experts.

**{21}** We therefore affirm the order of the district court.

**{22}   IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**