2004-NMCA-037

87 P.3d 1073

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**William P. BROWN, Defendant–
Appellant.**

**No. 23610.**

Court of Appeals of New Mexico.

Jan. 15, 2004.

Certiorari Granted, No. 28,471,
March 16, 2004.

**292**

Patricia A. Madrid, Attorney General, Jacqueline R. Medina, Assistant Attorney General, Santa Fe, for Appellee.

Stephen Karl Kortemeier, The Kortemeier Law Firm, Elephant Butte, for Appellant.

John Bigelow, Chief Public Defender, Sue A. Herrmann, Appellate Defender, Santa Fe, for Amicus Curiae.

*OPINION*

PICKARD, J.

{1} This case is a sequel to *Subin v. Ulmer*, 2001–NMCA–105, 131 N.M. 350, 36 P.3d 441. We decided in that case that a district court has no authority to order the Public Defender Department (Department) to pay expert witness fees for an indigent defendant who is represented by counsel paid for by family members. The question we must answer in this case is whether that rule applies equally to expert witness fees paid from unspecified state funds where counsel represents the indigent defendant pro bono for no fee. Based on our decision in *Subin*, the district court concluded that it lacked such authority and certified the issue for interlocutory appeal. We granted the application for appeal, and we now affirm.

**BACKGROUND**

{2} William Brown (Brown) was charged with committing three felony offenses and one misdemeanor offense. The magistrate court and district court each made an explicit finding that Brown was indigent. An attorney on contract with the Department was appointed to represent him. However, Stephen Kortemeier had previously entered his appearance as Brown's private attorney. Mr. Kortemeier then filed a declaration under oath that he had refunded Brown's retainer fee and agreed to represent Brown without charge. The State and Brown thereupon stipulated, and the district court ordered, that Brown was indigent and was "entitled to all services, including waivers of fees and costs, normally provided by the State of New Mexico to an indigent defendant."

{3} Counsel determined that expert witnesses were necessary to defend Brown. The Department, however, refused to provide funds for expert assistance in defending Brown on the ground that expert fees are not paid by the Department on behalf of an indigent defendant unless the defendant is represented by the Department or an attorney on contract with the Department. Additionally, the Department told Mr. Kortemeier he was not eligible to become a contract attorney.

{4} Brown then filed a motion with the district court seeking an order for funds from any appropriate source to hire necessary experts. Brown primarily argued that he had a constitutional right to the funds. He argued that *Subin* was wrongly decided, and he also argued that *Subin* was distinguishable (1) because his counsel's representation was pro bono whereas in *Subin* someone hired counsel on the defendant's behalf and (2) because Brown was "not determining which arm of the State is fiscally responsible to furnish the requested funds."

{5} A hearing was held at which Brown reiterated his position that *Subin* was incorrectly decided as a matter of constitutional law. The trial court indicated that it might help Brown if it had the power to make the order, but it did not want to order the Department to do anything without notice and an opportunity for the Department to be heard. Brown did not suggest that the Department was not necessary because he was seeking funds from other sources.

{6} Following the hearing, the State filed a response, arguing that *Subin* prohibited the district court from granting the requested relief. Brown filed a reply, pointing out that the motion did not ask that the funds be paid by the Department, but from any appropriate source. The bulk of the reply, however, was devoted to Brown's argument that *Subin* was incorrectly decided.

{7} Another hearing was held, at which the State reiterated its position that *Subin* was dispositive. The State questioned from what source Brown thought the requested funding should come. The State pointed out that the Department was the only entity with an appropriation for expert witnesses for indigent defendants; the State alleged that the district court did not have such funding, and neither did the district attorney. Brown then reiterated his arguments that *Subin* was incorrectly decided and that the court could order the requested funding to insure that his constitutional rights would not be violated. He did not suggest any alternative source of funding and never argued for a statutory right to expert witness fees.

{8} The district court denied Brown's motion, concluding that *Subin* was dispositive

because an indigent defendant has no right to counsel of his own choosing; that if Brown continued with his present counsel, he had to pay for the expert witness himself; and that if he wanted the State to pay for expert witness services, he had to avail himself of the services of the Department.

## DISCUSSION

{9} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. This right to assistance of counsel requires states to provide indigent criminal defendants with legal representation at public expense to ensure the fairness of their trials. *See Gideon v. Wainwright*, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The New Mexico Constitution has a parallel provision embracing the ideal that "[i]n all criminal prosecutions, the accused shall have the right to appear and defend himself in person, and by counsel." N.M. Const. art. II, § 14; *see State ex rel. Quintana v. Schnedar*, 115 N.M. 573, 575, 855 P.2d 562, 564 (1993) (noting state constitutional provision embraces and parallels ideal of federal provision). Further developments in Sixth Amendment jurisprudence have clarified that criminal defendants are entitled to effective assistance of counsel, *see Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (observing that the guarantee of effective assistance means indigents must be afforded adequate legal assistance), and established that the states are required to "provide indigent prisoners with the basic tools of an adequate defense." *Britt v. N.C.*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). In *Ake v. Oklahoma*, 470 U.S. 68, 74, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court specifically held that states must provide expert witness services as part of their constitutional obligation to provide indigent criminal defendants with meaningful access to justice when the assistance of an expert witness constitutes a basic tool of an adequate defense. *See Subin*, 2001–NMCA–105, ¶ 4, 131 N.M. 350, 36 P.3d 441 (recognizing holding of *Ake* ).

{10} Based on these principles, Brown asserts that he is entitled to the assistance of

expert witnesses at public expense, and that conditioning such assistance upon acceptance of representation by the Department violates his constitutional rights. Brown specifically argues that (1) *Subin* did not overrule *Quintana* and cannot be read consistently with *Quintana;* (2) all defendants have a constitutional right to counsel of their choosing, subject only to denial for abuse of that right, such as when the change of counsel will cause delay; and (3) conditioning a defendant's right to counsel on accepting Department services will inevitably result in a constitutionally prohibited conflict of interest. Brown does not argue on appeal the denial of any statutory right. We address each issue in turn and then discuss some miscellaneous arguments that Brown either does or does not raise.

### 1. *Subin* and *Quintana*

{11} Defendant contends that *Quintana* states the governing principles in this area, which include that courts retain the inherent authority to act "to guarantee the enforcement of constitutional civil liberty protections in criminal [cases]." 115 N.M. at 575, 855 P.2d at 564. He maintains that *Subin* is inconsistent with this principle to the extent that *Subin* held that district courts in general do not have authority to order the Department to pay expert witness fees on behalf of indigent defendants who are not its clients. *See id.* ¶¶ 5–12. Defendant concludes that "[t]he practical effect of *Subin* is to deny, to trial courts," the authority *Quintana* said they had, and as a result, "*Quintana* has been reduced to platitude[.]" We do not agree.

{12} In fact, in *Subin,* this Court ordered the Department to pay the expert witness fees of the defendant because we ruled that, under the particular circumstances of that case, the defendant's constitutional rights were in jeopardy. *Id.* ¶ 15. Thus, we recognized, and we continue to recognize, the important principle that courts have the inherent authority to insure that defendants are afforded their constitutional rights in criminal proceedings.

{13} In addition, the issue facing the Court in *Quintana* was very different from the issue facing this Court in *Subin* and in this case. *Quintana* involved the question of whether the courts or the Department had the ultimate authority to determine indigency for the purpose of requiring representation by the Department. 115 N.M. at 574, 855 P.2d at 563. In determining that the pertinent statutes permitted the courts to determine indigency, the Supreme Court reconciled the Indigent Defense Act enacted in 1968, NMSA 1978, §§ 31–16–1 to –10 (1968, as amended through 1973), with the Public Defender Act enacted in 1973, NMSA 1978, §§ 31–15–1 to –12 (1973, as amended through 2001), against a backdrop that recognized courts have inherent power to appoint counsel for indigent defendants to safeguard their constitutional rights. *Quintana,* 115 N.M. at 575–78, 855 P.2d at 564–67.

{14} The holding of *Subin* is not to the contrary. Because the Department "stood ready, willing, and able to provide expert witness assistance to [the defendant therein] as part of its duty to represent her," we ruled that the case was not about a person whose constitutional right to counsel was proposed to be denied. *Subin,* 2001–NMCA–105, ¶ 5, 131 N.M. 350, 36 P.3d 441. In contrast, the Court in *Quintana* found that the Department was proposing to deny an indigent defendant his right to counsel, and accordingly permitted the district court to intervene and order the Department to represent the defendant. *Quintana,* 115 N.M. at 578, 855 P.2d at 567. Thus, *Subin* is consistent with *Quintana;* the cases simply involve different aspects of the facilitation of the right to counsel under different facts.

### 2. Right to Counsel of Choice

{15} Defendant contends that applying the rule in *Subin* to his case would deny him his right to counsel of his choice. *Subin* relied on *State v. Hernandez,* 104 N.M. 268, 272, 720 P.2d 303, 307 (Ct.App. 1986), and *State v. Salazar,* 81 N.M. 512, 514, 469 P.2d 157, 159 (Ct.App.1970), for the proposition that "indigent defendants have no right to choose their own counsel or insist that one attorney be substituted for another," and *Subin* ruled that the defendant's position would permit just that. *Subin,*

2001–NMCA–105, ¶ 6, 131 N.M. 350, 36 P.3d 441. Defendant maintains that *Subin* was incorrectly decided to this extent because the cases relied upon do not stand for the proposition asserted.

{16} Both *Hernandez* and *Salazar* upheld the trial courts' decisions not to substitute counsel when the defendants in those cases were voicing dissatisfaction with their appointed counsel. In both cases, the appellate court held that trial courts have discretion in the matter of whether to order a substitution of counsel, and in *Hernandez,* the appellate court held that a defendant's *right* to have different counsel was dependent on a showing of ineffective assistance of counsel. *Hernandez,* 104 N.M. at 272, 720 P.2d at 307; *Salazar,* 81 N.M. at 514, 469 P.2d at 159. Brown relies on the discretion of the trial court, but in our view, the appropriate focus should be on the defendant's right, which is not invoked until there is a potential denial of a constitutional right, i.e., ineffective assistance of counsel. It is a different proposition to state that a trial court has the discretion to allow or deny substitution than to hold that a defendant has a right to substitution.

{17} Defendants, such as Brown, do have the right to select their own counsel as long as they arrange for counsel themselves and as long as rules governing the practice of law and other procedural and substantive rules are satisfied. Neither this opinion nor *Subin* holds otherwise. We hold only that defendants who wish to select their own counsel must take all the consequences that go along with that selection, and one such consequence is that public funding will not be available for expert witness services for the reasons outlined in *Subin*. *See id.* ¶ 9 (indicating that all public funding for counsel and expert witness fees for indigent defendants has been appropriated to the Department).

{18} The dissent argues that Brown was not required to rebut below the factual predicate concerning all funding being appropriated to the Department. As a matter of fairness to the trial court and to the State, we disagree. *See Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 540, 893 P.2d 428, 436 (1995) (stating that the purpose of the preservation rule is to alert the trial court to a claim of error to allow the court a fair opportunity to rule on the claim and also to give the opposing party a fair opportunity to respond to the claim). The parties and the trial court below expressly operated under the same factual predicate as outlined in *Subin*. It was Defendant's motion and therefore his burden to show the operative facts were different than in *Subin. See State v. Gardner,* 95 N.M. 171, 175, 619 P.2d 847, 851 (Ct.App.1980).

{19} To the extent that Brown argues that it is only when a defendant is abusing the right to counsel of choice, such as by using a desire for substitution of counsel as a delay tactic, that a court will be justified in denying substitution, we disagree. There are many good reasons why a court might deny a defendant the opportunity for substitution. For example, in a judicial district where there is only one public defender, a court might well require a showing of potential violation of constitutional rights, e.g., ineffective assistance, before requiring the Department to go outside of Departmental counsel or to another judicial district in satisfying its obligation to provide counsel to an indigent defendant. In our case, as we alluded to in *Subin,* permitting Brown to select his own counsel and then obtain services upon district court order, instead of going through Departmental processes, would put Brown in a better position and give him more rights than any other indigent defendant. *See id.* ¶ 6.

{20} Similarly, to the extent that the dissent contends that all defendants have a right both to counsel of choice and to defense services such that requiring an indigent defendant to select a public defender as a condition of obtaining defense services would unconstitutionally burden the right to counsel of choice, we also disagree. None of the cases relied on by the dissent for the proposition that indigent defendants have a constitutional right to counsel of choice actually decided such a proposition. For example, as the United States Supreme Court explained in *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988),

We have further recognized that the purpose of providing assistance of counsel is simply to ensure that criminal defendants receive a fair trial, and that in evaluating Sixth Amendment claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such. Thus, while the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment, the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers.

The Sixth Amendment right to choose one's own counsel is circumscribed in several important respects.

*Id.* at 159, 108 S.Ct. 1692 (internal quotation marks and citations omitted). *Wheat* was decided in the context of a defendant who wanted to be represented by a co-defendant's counsel, which may have led to a conflict of interest, and the Court upheld the trial court's rejection of the non-indigent defendant's counsel of choice. *Id.* at 164, 108 S.Ct. 1692. In addition to the conflict situation in front of the Court in *Wheat,* the Court explained that other instances in which the right to counsel of choice could be circumscribed included when a defendant wanted a lawyer who was not a member of the appropriate bar or a lawyer who the defendant could not afford or who did not want to represent the defendant. *See id.* at 159, 108 S.Ct. 1692.

{21} The Court was obviously not seeking to exhaust the possibilities in that it did not list the situation Brown recognizes of the defendant who wants to delay the trial as one of the situations in which the right to counsel of choice is qualified or circumscribed. What we learn from *Wheat* is that the right to counsel of choice is not an unqualified right and therefore it must yield to other important values in appropriate cases, such as the case here, in which a state legislature decides that its finances are such that it makes all defense services available to indigent defendants through a public defender system.

{22} Brown argues that since a paying defendant would be able to retain counsel of choice, it is a violation of the equal protection clause to deny him the same opportunity. He relies on the proposition that wealth is a suspect class. Wealth, however, is not a suspect class. *See State v. Rotherham,* 122 N.M. 246, 254, 923 P.2d 1131, 1139 (1996) (indicating that only race, national origin, and alienage are suspect classes).

{23} Additionally, it has never been the law that indigent defendants are entitled to all of the benefits that a wealthy person might be able to afford. *See Ross v. Moffitt,* 417 U.S. 600, 616, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) ("The duty of the [s]tate under our cases is not to duplicate the legal arsenal that may be privately retained by a criminal defendant . . ., but only to assure the indigent defendant an adequate opportunity to present his claims fairly in the context of the [s]tate's . . . process."). Thus, the dissent's reliance on *San Antonio Independent School District v. Rodriguez,* 411 U.S. 1, 29, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) is inapposite. Representation by the Department, which Brown has rejected, would have satisfied Brown's right to counsel and ancillary services. His equal protection rights were not violated.

### 3. Conflict of Interest

{24} Among the rationales for the *Subin* opinion were the practical and prudential concerns that we expressed, including the Department's limited budget and its obligation to administer its resources so that all of its clients realize their constitutional rights to counsel and ancillary services. *Subin,* 2001–NMCA–105, ¶¶ 12–13, 131 N.M. 350, 36 P.3d 441. Defendant claims there is a necessary and inherent conflict of interest in having the Department manage limited resources. He compares requiring him to chose the Department's attorneys, with their ability to obtain expert witness services only on compliance with the Department's procedures and with the possibility of denial of expert witness services, to the sort of conflict of interest that is present when a third party pays for a defendant's representation. *See, e.g., Wood v. Ga.,* 450 U.S. 261, 266–67, 101

S.Ct. 1097, 67 L.Ed.2d 220 (1981) (indicating that there would be a conflict of interest when the defendants' employer (who was also a defendant) paid for the attorney representing all defendants and the attorney may have been representing the employer's interests more than the individual defendant's interests).

{25} We cannot agree with this sweeping contention that could impact public defender systems, state and federal, throughout the country. All government agencies must live within budgetary constraints, subject of course to constitutional considerations. For example, if an inadequate budget led to ineffective assistance of counsel, it would be the duty of courts to insure that convictions obtained thereby were vacated, just as it is the duty of courts to insure their own adequate operation. *See Quintana,* 115 N.M. at 575–78, 855 P.2d at 564–67 (indicating that courts will sometimes need to act in accordance with their inherent power to insure that constitutional rights are safeguarded); *Subin,* 2001–NMCA–105, ¶ 15, 131 N.M. 350, 36 P.3d 441 (affirming the district court's order in that case to insure that the defendant's rights to both counsel and a speedy trial were not violated); *Wilson v. State,* 574 So.2d 1338, 1339–40 (Miss.1990) (recognizing inherent authority of courts to provide adequate funding for their operations in cases where the legislature fails to so provide, but refusing to apply that rule to indigent defense attorney fees set by legislature under the facts of that case); *State ex rel. Wilke v. Hamilton County Bd. of Comm'rs,* 90 Ohio St.3d 55, 734 N.E.2d 811, 818 (2000) (acknowledging rule that courts have inherent authority to insure necessary funding for their operations).

{26} Brown claims that it is insufficient to adjudicate ineffective assistance of counsel claims on a case by case basis if the problem is the inherent conflict presented by budgetary considerations. No specific authority is cited, however, and Brown appears to rely on genuine conflict of interest cases, such as *State v. Martinez,* 2001–NMCA–059, ¶ 25, 130 N.M. 744, 31 P.3d 1018 (where the defendant's attorney or his associates may have been involved in the crimes), which are inapplicable for the reasons stated above. *See*

*also In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (holding that an appellate court will not decide an issue in a party's favor if no authority is cited for the proposition). In sum, we do not perceive an automatic and inherent conflict of interest that would deprive Brown of his rights if he were required to become a client of the Department in order to access expert witness services.

### 4. Other Contentions and Considerations

#### a. Law of the Case

██ {27} Again without citing authority, Brown contends that the original order, entered by the district court on stipulation of the parties, establishing Brown's indigence and his entitlement to "all services" normally provided indigent defendants, was law of the case and prohibited the district court from denying him funds for expert witness fees. The doctrine of law of the case traditionally applies when there has been a specific ruling in a prior and final appellate proceeding. *State v. House,* 2001–NMCA–011, ¶ 10, 130 N.M. 418, 25 P.3d 257. In contrast, while a matter is pending before the district court, a district court may change its mind at any time prior to entry of the final ruling. *State v. Diaz,* 100 N.M. 524, 525, 673 P.2d 501, 502 (1983); *State v. Doe,* 99 N.M. 460, 463, 659 P.2d 912, 915 (Ct.App.1983). Thus, the fact that the trial court initially entered a stipulated order allowing Brown access to "all services" did not preclude it from reversing that ruling upon full briefing and argument when the matter was later contested.

#### b. Statutory Authority

{28} Brown does not argue that the Indigent Defense Act gives him a right to expert witness fees to be paid for by funds appropriated to either the district court or the Administrative Office of the Courts (AOC). While he claims not to care where the fees come from, he acknowledges that the factual basis for the *Subin* opinion was that all funding for such fees was appropriated by the Legislature to the Department. *See Subin,* 2001–NMCA–105, ¶ 9, 131 N.M. 350, 36 P.3d 441. He did not make a showing below or a

claim on appeal that that factual basis was erroneous. In light of Brown's failure to make a showing that either the district court's or AOC's budget has such funds, we do not believe that the Legislature intended current implementation of the Indigent Defense Act to come from any other source of funds than the Department. *See Herrera v. Sedillo*, 106 N.M. 206, 207, 740 P.2d 1190, 1191 (Ct.App.1987) ("The Indigent Defense Act gives indigent defendants the right to free counsel, thereby recognizing their sixth amendment rights. The Public Defender Act, enacted later, provides an administrative agency for accomplishing this objective."). Therefore, we continue to believe that *Subin* is the controlling authority.

### c. Out–of–State Authority

{29} We are aware that there exists out-of-state authority that is contrary to what we hold here. *See Thompson v. State*, 525 So.2d 1011, 1011 (Fla.Dist.Ct.App.1988); *English v. Missildine*, 311 N.W.2d 292, 293–94 (Iowa 1981); *State v. Manning*, 234 N.J.Super. 147, 560 A.2d 693, 697–99 (Ct.App.Div.1989); *State v. Burns*, 4 P.3d 795, 800–02 (Utah 2000). We are not, however, impressed with the reasoning of those cases. Some, such as *Thompson*, appear to contain no reasoning whatsoever. Others, such as *English*, 311 N.W.2d at 294, and *Manning*, 560 A.2d at 699, appear to be grounded in the view that it would be strange to require the public defender to provide both counsel and expert witness assistance when the alternative is to require the public defender to pay only the latter, thereby saving public money and placing less of a burden on the public defender system.

{30} We believe it is noteworthy in our jurisdiction that the Department has appeared in both the *Subin* case and in this case to advocate the rule we adopted in *Subin* and affirm herein. Thus, it is apparent to us that the Department believes that it can better administer the limited funds appropriated by the Legislature for indigent defense services without interference, or competition, from the courts. In this connection, we also take note of the lengths that one court had to go to implement its rule. *See In re Cannady*, 126 N.J. 486, 600 A.2d 459, 462–64 (1991). As we stated in *Subin*, 2001–NMCA–105, ¶¶ 4, 12, 131 N.M. 350, 36 P.3d 441, and reiterate here, we will not interfere with the administrative affairs of another agency absent compelling reason, such as potential constitutional violations of the sort present in *Subin* or a situation that forces a choice between constitutional rights of equal footing.

{31} In addition, we are not alone in the view expressed in *Subin*. There exists out-of-state authority that is consistent with our holding. In particular, our neighbor state of Colorado has ruled that, "If Defendant wants the state to pay the costs of his attorney and supporting services, his only choice is to be represented by the public defender, or in the case of a conflict, a state-appointed alternative counsel." *People v. Cardenas*, 62 P.3d 621, 623 (Colo.2002). As was the case in *Subin*, 2001–NMCA–105, ¶ 6, 131 N.M. 350, 36 P.3d 441, an underlying rationale for the court's decision in *Cardenas* was that an indigent "does not have the right to pick the attorney of his choice." 62 P.3d at 623.

{32} Thus, as in *Subin*, we again perceive no threat to Brown's constitutional right to counsel or other constitutional rights by denying him funds for expert witness services as long as he rejects the opportunity with which the Legislature has provided him for satisfaction of his right to counsel. In New Mexico, the Legislature has made the policy decision that indigent defense services paid for by public funds shall be administered by the Department. The Department has filed an amicus brief indicating its willingness to provide the necessary services to Brown and urging affirmance of the district court order. We will not second guess that policy decision in the absence of facts suggesting our need to step in to safeguard constitutional rights.

## CONCLUSION

{33} The district court's order is affirmed.

{34} **IT IS SO ORDERED.**

WECHSLER, C.J. concurs.

VIGIL, Judge (dissenting).

VIGIL, Judge (dissenting).

{35} I respectfully dissent because the majority wrongfully focuses on the status of the attorney representing an indigent instead of the defendant's indigency to determine whether he is entitled to the basic tools of an adequate defense at State expense. In doing so, the majority puts Brown in the intolerable position of having to choose between his constitutional right to counsel of choice and his constitutional right to the basic tools of an adequate defense, it ignores clear provisions of the Indigent Defense Act, which provide that an indigent defendant is entitled to necessary services at public expense whether or not he is represented by private counsel, and it contravenes public policies that encourage attorneys to donate their services to the poor, thereby resulting in unnecessary expenditures of public funds. An indigent is entitled to the basic tools of an adequate defense regardless of whether his attorney is a public defender or a private attorney donating his services.

**FACTS AND PROCEDURAL BACKGROUND**

{36} On March 11, 2002, Brown was arrested and charged with committing three felonies and one misdemeanor. At his first appearance in the magistrate court on March 27, 2002, he was represented by attorney Stephen Kortemeier. While jailed, Brown had completed an eligibility determination for indigent defense services form, and the magistrate court found he was indigent. An attorney on contract with the Department was later appointed to represent Brown on April 12, 2002, but Mr. Kortemeier continued to represent Brown through the preliminary hearing in magistrate court. Brown was then bound over to the district court for trial.

{37} In the district court Mr. Kortemeier filed a "declaration of counsel" stating he had refunded the "nominal retainer" he received from Brown and that he agreed to represent Brown without charge. The district judge simultaneously made his own finding that Brown was indigent, and he ordered that Brown "is entitled to all services ... normally provided by the State of New Mexico to an indigent defendant." This order was filed with the State's consent, and approval and the State does not challenge its validity. It is therefore the controlling order before us.

{38} The case then went into its discovery phase and Mr. Kortemeier determined that he needed to incur investigative and expert witness expenses to defend Brown. He therefore made a request for authorization to incur expenses and fees to be paid by the State, arguing the expenses were necessary to present an adequate defense, and that the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article II, §§ 14 and 18 of the New Mexico Constitution, and Section 31–16–3 of the Indigent Defense Act, require the State to pay the expenses because Brown is indigent. Mr. Kortemeier submitted his affidavit with the motion in which he related that the Department refused to make the funds available for Brown's defense because Brown was not a client of the Department and Mr. Kortemeier was not on contract with the Department. Furthermore, Mr. Kortemeier was told he was not eligible to become a contract attorney. One of the experts needed was a ballistics expert. Mr. Kortemeier contacted a qualified ballistics expert who was willing to accept the fee customarily paid by the Department for such expertise.

{39} The State did not contest the necessity or reasonableness of the expenses in its response. It only asserted that *Subin* prohibited the court from ordering the Department to pay the expert witness fees and expenses. In reply, Brown pointed out his motion did not seek an order specifically directing the Public Defender to pay the funds, so *Subin* is not controlling, and if it is controlling, it should be distinguished or overruled. Finally, he argued that *Subin* is contrary to *Quintana*, which states that the district court retains the ultimate authority to insure that an indigent's constitutional and statutory rights are protected.

{40} The district judge concluded that *Subin* controls and is not in conflict with *Quintana*. Since Brown is indigent, the district judge reasoned, he does not have a right to counsel of his own choosing. Therefore, he concluded, Brown could choose to be represented by the Department and have the State pay the expenses or he could choose to

continue with Mr. Kortemeier as his counsel and provide for his own investigative and expert witness expenses. The district judge certified his order for an interlocutory appeal, which we granted.

## CHOOSING BETWEEN CONSTITUTIONAL RIGHTS

{41} The majority recognizes that Brown has a constitutional right to select his own counsel, but then it takes that right away from him in holding that, "defendants who wish to select their own counsel must take all the consequences that go along with that selection, and one such [automatic] consequence is that public funding will not be available for expert witness services." Majority Opinion ¶ 17. I respectfully submit that this is an unconstitutional result.

{42} The Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall ... have the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. Since 1963, this constitutional provision has required states to provide indigent criminal defendants with legal representation at public expense to insure the fairness of their trials. *Gideon*, 372 U.S. at 344, 83 S.Ct. 792. The New Mexico Constitution embraces and parallels these ideals when it states at Article II, § 14, " '[i]n all criminal prosecutions, the accused shall have the right to appear and defend himself in person, and by counsel.' " *Quintana*, 115 N.M. at 575, 855 P.2d at 564 (quoting N.M. Const. art. II, § 14).

{43} Inherent in the constitutional right to counsel is the right to be represented by counsel of choice. Recognition of the right to choose one's attorney goes back to 1932 when the Supreme Court stated, "[i]t is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." *Powell v. Alabama*, 287 U.S. 45, 53, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *see also Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) (recognizing that the right to select and be represented by one's preferred attorney is comprehended by the Sixth Amendment). Furthermore, a court, "must recog-

nize a presumption in favor of ... counsel of choice." *Id.* at 164, 108 S.Ct. 1692.

{44} Indigency does not deprive a criminal defendant of his or her constitutional right to counsel of choice. *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624–25, 109 S.Ct. 2646, 105 L.Ed.2d 528 (1989) states, "[t]he Sixth Amendment guarantees a defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." We implicitly recognized that right in *State v. Lewis*, 104 N.M. 218, 220, 719 P.2d 445, 447 (Ct.App. 1986) when we stated:

> [t]he sixth amendment implicitly requires that a defendant facing criminal charges be afforded a fair opportunity to be heard at trial through counsel of his own choosing. The constitutional right of an indigent criminal defendant to the assistance of counsel for his defense is a fundamental right, essential to a fair trial.

(Citations omitted.)

{45} Admittedly, an indigent's right to choose his or her attorney is not absolute. For example, a defendant may not insist on representation by an attorney he cannot afford or who for other reasons, declines to represent the defendant; a defendant is not entitled to an attorney who is not a member of the bar; and a defendant may not insist on an attorney who has a conflict of interest. *Wheat*, 486 U.S. at 159, 108 S.Ct. 1692. It is also recognized that an indigent defendant, as a general rule, has no right to choose or substitute counsel *appointed* by the court to represent him because he is indigent. *Hernandez*, 104 N.M. at 272, 720 P.2d at 307; *Salazar*, 81 N.M. at 514, 469 P.2d at 159. The majority rely on *Hernandez* and *Salazar* to conclude that Brown has no right to counsel of choice in this case. Majority Opinion ¶¶ 15–16. However, this reliance is misplaced because Mr. Kortemeier is not appointed, and he represented Brown before a Public Defender attorney was ever appointed to represent Brown. Brown's constitutional right to have Mr. Kortemeier represent him is not overcome by any recognized exception in this case. Brown therefore has a constitu-

tional right to be represented by Mr. Kortemeier, his counsel of choice, since Mr. Kortemeier has agreed to represent him pro bono.

{46} The constitutional right to counsel of choice is not the only constitutional right at issue. Further developments in Sixth Amendment jurisprudence have established that the states are required to "provide indigent prisoners with the basic tools of an adequate defense." *Britt*, 404 U.S. at 227, 92 S.Ct. 431. Our courts have expressly recognized this constitutional right of indigent criminal defendants. *See State v. Turner*, 90 N.M. 79, 82, 559 P.2d 1206, 1209 (Ct.App. 1976) (stating an indigent must be provided with the basic tools for an adequate defense); *State v. Romero*, 87 N.M. 279, 282, 532 P.2d 208, 211 (Ct.App.1975) (stating requirement that indigent defendants be provided with basic tools of an adequate defense should be construed liberally in favor of defendant's right to equal protection of the law). In *Ake*, 470 U.S. at 74, 105 S.Ct. 1087, the Supreme Court specifically held that states must provide expert witness services as part of their constitutional obligation to provide indigent criminal defendants with meaningful access to justice when the assistance of an expert witness constitutes a "basic tool of an adequate defense." We have also expressly recognized this constitutional right. *See Subin*, 2001–NMCA–105, ¶ 4, 131 N.M. 350, 36 P.3d 441 (recognizing holding of *Ake*). Most importantly, this constitutional right is not dependent on the status of counsel. The determinative factor is the defendant's indigency. An indigent defendant with pro bono counsel is no less entitled to due process and fundamental fairness than one with appointed counsel.

{47} Brown therefore has two equally valuable constitutional rights: the constitutional right to counsel of choice and the constitutional right to be provided with the basic tools of an adequate defense. The holding of the majority requires Brown to choose between these constitutional rights. However, it is well settled that forcing a criminal defendant to "surrender" one constitutional right "in order to assert another" is "intolerable." *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (describing situation whereby defendant was obliged to either forfeit what he believed to be a valid Fourth Amendment claim or to waive his Fifth Amendment privilege against self-incrimination); *State v. Gutierrez*, 119 N.M. 618, 623, 894 P.2d 395, 400 (Ct.App.1995) (quoting *Simmons* that it is "intolerable" that one constitutional right should have to be surrendered in order to assert another); *see also State v. Aragon*, 1999–NMCA–060, ¶ 12, 127 N.M. 393, 981 P.2d 1211 (acknowledging that forcing the defendant to either continue with ineffective counsel or waive his right to a jury trial would violate the constitution). In *United States ex rel. Wilcox v. Johnson*, 555 F.2d 115 (3d Cir.1977), the Third Circuit concluded that conditioning the exercise of the right to testify upon a waiver of the right to counsel constituted an impermissible infringement upon both rights. Particularly applicable here, the court said:

A defendant in a criminal proceeding is entitled to certain rights and protections which derive from a variety of sources. He is entitled to all of them; he cannot be forced to barter one for another. When the exercise of one right is made contingent upon the forbearance of another, both rights are corrupted.

*Id.* at 120.

{48} The fact that Brown is indigent does not diminish either constitutional right to require him to accept all or none of the services normally provided to an indigent defendant, as the majority holds. While it is true that wealth is not a suspect class, I respectfully submit that the State must assert and establish a compelling reason to justify this disparate treatment. *See San Antonio Indep. Sch. Dist.*, 411 U.S. at 29, 93 S.Ct. 1278 (stating when a statute differentiating on the basis of wealth interferes with the exercise of a fundamental right, strict scrutiny applies). The State has not done so, and the majority fails to identify a compelling state interest to justify its result.

{49} The majority fails to give full recognition to Brown's constitutional right to Mr. Kortemeier's representation as his pro bono counsel and his constitutional right as an

**302**

indigent to obtain the basic tools of an adequate defense at public expense. The majority also requires Brown to choose which constitutional right he will have at the expense of the other. I therefore dissent.

## THE INDIGENT DEFENSE ACT AUTHORIZES THE EXPENDITURES

{50} I would also hold that Brown has a statutory right to the assistance he seeks. The majority suggests that Brown did not argue a statutory right to investigative and expert witness fees to the district judge. Majority Opinion ¶¶ 7, 25. This is incorrect. The "request for authorization to incur expenses & fees" specifically cites to Section 31–16–3 of the Indigent Defense Act. This statute provides:

> A. A needy person who is being detained by a law enforcement officer, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime, *is entitled to be represented by an attorney to the same extent as a person having his own counsel and to be provided with the necessary services and facilities of representation, including investigation and other preparation. The attorney, services and facilities and expenses and court costs shall be provided at public expense for needy persons.*

> B. A needy person entitled to representation by an attorney under Subsection A is entitled to be:

> (1) counseled and defended at all stages of the matter beginning with the earliest time when a person providing his own counsel would be entitled to be represented by an attorney;

> (2) represented in any appeal or review proceedings; and

> (3) represented in any other postconviction proceeding that the attorney or the needy person considers appropriate unless the court in which the proceeding is brought determines that it is not a proceeding that a reasonable person with adequate means would be willing to bring at his own expense.

> C. *A needy person's right to a benefit under this section is unaffected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage.*

(Emphasis added.)

{51} New Mexico enacted the Indigent Defense Act in 1968, and the Public Defender Act in 1973, to ensure that indigent criminal defendants receive the services to which they are constitutionally entitled. *Quintana,* 115 N.M. at 575, 855 P.2d at 564. These acts provide the statutory framework within which to evaluate the question presented, and de novo review applies. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (recognizing that the standard of review for issues of statutory interpretation and construction is de novo); *see also Subin,* 2001–NMCA–105, ¶ 4, 131 N.M. 350, 36 P.3d 441 (applying de novo review in an analogous case).

{52} My analysis is guided by the following rules of statutory construction. "The starting point in every case involving the construction of a statute is an examination of the language utilized by [the Legislature]" in drafting the pertinent statutory provisions. *State v. Wood,* 117 N.M. 682, 685, 875 P.2d 1113, 1116 (Ct.App.1994). "When a statute contains language which is clear and unambiguous, we must give effect to that language and refrain from further statutory interpretation." *State v. Jonathan M.,* 109 N.M. 789, 790, 791 P.2d 64, 65 (1990); *accord State v. Shije,* 1998–NMCA–102, ¶ 6, 125 N.M. 581, 964 P.2d 142. However, the plain meaning of the rule is only a guideline for determining legislative intent. *Junge v. John D. Morgan Constr. Co.,* 118 N.M. 457, 463, 882 P.2d 48, 54 (Ct.App.1994). "It is the responsibility of this Court to search for and effectuate the purpose and object of the underlying statutes." *State v. Johnson,* 2001–NMSC–001, ¶ 6, 130 N.M. 6, 15 P.3d 1233.

{53} The Indigent Defense Act prescribes that needy persons are "entitled to be represented by an attorney to the same extent as a person having his own counsel and to be provided with the necessary services and facilities of representation, including investigation and other preparation ... at public expense." Section 31–16–3(A). The plain language of this statute directs that Brown is entitled to investigative and expert assistance

at public expense upon a showing that he is a "needy person" and that the desired services are "necessary." Additionally, the Indigent Defense Act provides that a "needy person's right to a benefit under this section is unaffected by his having provided a similar benefit at his own expense, or by his having waived it, at an earlier stage." Section 31–16–3(C). Thus, under the plain language employed by the Legislature, Brown's right to the benefit of publicly funded investigative and expert assistance cannot be diminished as a consequence of his waiver of appointed counsel. We have previously observed, "[the] Indigent Defense Act recognizes that a defendant may be represented by employed counsel and still be indigent in connection with other matters pertaining to defense of the case." *State v. Apodaca*, 80 N.M. 244, 246, 453 P.2d 764, 766 (Ct.App.1969).

{54} The majority suggest that the Public Defender Act should be regarded as a kind of legislative amendment to the Indigent Defense Act, by which the Department was designated as the *exclusive* source of services and funding for all indigent defendants. Majority Opinion ¶¶ 25, 27, 29. However, the Supreme Court has previously held that the Public Defender Act does not supercede the Indigent Defense Act, *see Quintana*, 115 N.M. at 576, 855 P.2d at 565, and nothing in the Indigent Defense Act conditions the receipt of necessary services or funding on acceptance of representation by the Department. Furthermore, the 'exclusive source' argument advanced by the majority is at odds with the plain language of the Indigent Defense Act, which specifically provides that "[p]ayments of costs, expenses and attorney fees" to which indigent defendants are entitled "shall be made from . . . funds appropriated to the district court." Section 31–16–8(A)(2); *see* Rule 5–511(B)(2)(a) NMRA 2003 (recognizing that funds are appropriated to the administrative office of the courts "for the payment of witnesses in indigency cases").

{55} The majority states that the Indigent Defense Act cannot provide an independent basis for an award of expert assistance at public expense because the Legislature has not seen fit to make a specific appropria-

tion to the district courts pursuant to Section 31–16–8(A)(2) to cover such expenditures. Majority Opinion ¶¶ 25, 27, 29. In this regard, the majority opinion can be interpreted as stating that the State proved the Public Defender Department is the only entity with an appropriation for expert witnesses for indigent defendants, and that the district court does not have such funding, and neither does the district attorney. Majority Opinion ¶ 7. There was no such proof. All that occurred was oral argument without proof or evidence. This record does not show whether funds have been appropriated to any entity apart from the Department for indigent defendants. In *Subin* the court stated, "the parties agree that no funds have been appropriated to the district court for either counsel fees or expenses and that all such funds are contained in the [Public Defender] Department's appropriation." *Id.* ¶ 9. This was apparently the status of appropriations in 2001 when *Subin* was decided. The majority faults Brown for not proving that this factual agreement of the parties in 2001 was erroneous. Majority Opinion ¶ 25. Brown had no obligation to prove that agreement was erroneous in this case in 2002. Again, this record does not show that funds have been appropriated only to the Department for indigent defendants.

{56} Assuming that no such appropriation has been made, I do not regard the Legislature's inaction as a repudiation of the rights or the obligations established under the Indigent Defense Act. The Legislature's failure to make an appropriation earmarked to facilitate the provision of services to indigent defendants may simply reflect a belief that such services can be provided within the existing budget. *See Subin*, 2001–NMCA–105, ¶ 11, 131 N.M. 350, 36 P.3d 441.

{57} The majority chooses to ignore the plain, unambiguous language of the Indigent Defense Act, and its holding is premised on an assumption, not established by this record, that funds for indigent criminal defendants have only been appropriated to the Department. The Legislature, through the Indigent Defense Act, has provided the mechanism by which an indigent defendant who is represented by pro bono counsel will

not be deprived of his constitutional right to the basic tools of an adequate defense at public expense. For this additional reason, I dissent.

## PUBLIC POLICY

{58} I must also dissent because the majority opinion contravenes public policy in three important respects.

{59} First, the majority discourages the members of the bar of New Mexico from representing indigent defendants pro bono. On the other hand, the Supreme Court has directed as a matter of professional responsibility that, "A lawyer should be mindful of deficiencies in the administration of justice and of the fact that the poor, and sometimes persons who are not poor, cannot afford adequate legal assistance, and should therefore devote professional time and civic influences on their behalf. A lawyer should aid the legal profession in pursuing these objectives[.]" Preamble to Rules of Professional Conduct, 16 NMRA 2003. This directive is carried forth in Rule 16–601 NMRA 2003, which states that attorneys should aspire to render at least 50 hours of pro bono public legal services per year. Our courts have recognized the value and importance of pro bono services to the poor. *See, e.g., Maestas v. Allen*, 97 N.M. 230, 232, 638 P.2d 1075, 1077 (1982) (commending counsel for providing services on a pro bono basis to persons who are unable to retain counsel); *Lujan v. Lujan*, 2004–NMCA–036, ¶ 23, 135 N.M. 285, 87 P.3d 1067, 2003 WL 23357696 [No. 22, 984 (N.M.Ct.App. Oct. 28, 2003) ] (commending attorneys for pro bono representation, stating that they perform a valuable service in the tradition of the most honorable aspects of the profession of law), *petition for cert. filed,* [No. 28,394 (N.M.Sup.Ct. Nov. 17, 2003) ]. It is a strong policy of New Mexico to encourage attorneys to provide pro bono representation to indigent persons, as a public service and a professional responsibility, and we should advance that public policy by encouraging and supporting, not discouraging pro bono services. I agree with the statement of the Honorable Judith Billings, past chair of the American Bar Association Standing Committee on *Pro Bono* and Public Service, that:

Judges have a special opportunity, and obligation, to use their positions to provide access to our justice system. As leaders in the community and the bar, we can lead the way to enhance access. Judges can encourage the involvement of lawyers to provide *pro bono* legal assistance to those without the financial means to afford counsel. . . . Judges can use the court's administrative tools to develop a court culture that is supportive of *pro bono* service.

Justice Rebecca L. Kourlis & Judge Daniel M. Taubman, *Changes to Code of Judicial Conduct Allow Judges to Support Pro Bono Legal Services*, 20 Colo. Law. 41 (May 2000) (quoting Billings, *"Using the Judiciary to Promote Pro Bono Activity," Dialogue* 14 (ABA Div. for Legal Services, Summer 1997)).

{60} Secondly, the majority opinion results in the unnecessary expenditure of public funds. While the majority recognizes that the Department has a "limited budget" and an "obligation to administer its resources so that all of its clients realized [sic] their constitutional rights to counsel and ancillary services", Majority Opinion ¶ 24, its reasoning will result in higher, unnecessary expenditures by the State. First, it results in a greater client base for the Department since it discourages pro bono representation. Second, instead of allowing the State to pay only limited expenses of Brown's defense, the majority requires the State to pay for all of them, including the most expensive component, counsel. The majority holding guarantees a need to spend more public funds, instead of encouraging pro bono representation with the potential to conserve state funds. It therefore results in an unreasonable and unnecessary burden on the public treasury. Our courts have previously noted that the Department's resources are both limited and escalating. *See March v. State,* 105 N.M. 453, 455, 734 P.2d 231, 233 (1987) (observing that the public defender's office is overburdened); *cf. In re Allred,* 2001–NMSC–019, ¶ 21, 130 N.M. 490, 27 P.3d 977 (observing that resources of the judicial system, including the Department are thinly stretched). Requiring indigent defendants to abandon donated legal services and requiring

them to accept representation by public defenders as a condition of receiving other basic tools of an adequate defense will only further increase these burdens. In contrast, by permitting indigent defendants to avail themselves of the free services of pro bono counsel, the State and the Department will potentially be saved money and resources. Public policy dictates we follow the latter course. *See Coyazo v. State,* 120 N.M. 47, 53, 897 P.2d 234, 240 (Ct.App.1995) (commenting on the desirability of private attorney involvement with indigent defense work to alleviate the burdens on the system).

{61} Finally, the Indigent Defense Act and the Public Defender Act were designed to provide indigent criminal defendants with *meaningful* access to justice. Consistent with that purpose we should confirm an indigent's entitlement to the basic tools of an adequate defense whether or not the attorney is donating his services to the indigent. The constitutional rights at issue in this case are based on Brown's indigency, not the status of his attorney. The majority of our sister states have reached similar conclusions when confronted with analogous issues. *See, e.g., Ex parte Sanders,* 612 So.2d 1199, 1201 (Ala.1993) (holding indigent defendant has right to public funds to hire expert although represented by counsel retained by family); *Dubose v. State,* 662 So.2d 1189, 1191 (Ala. 1995) (following *Sanders* ); *People v. Worthy,* 109 Cal.App.3d 514, 167 Cal.Rptr. 402, 406 (1980) (concluding that, upon a proper showing of necessity, trial court must provide an indigent defendant expert services, without regard to whether his counsel is appointed or pro bono); *People v. Evans,* 271 Ill.App.3d 495, 208 Ill.Dec. 42, 648 N.E.2d 964, 969 (1995) (concluding that indigent defendant entitled to expert witness funding although represented by private law firm where services provided on pro bono basis); *Missildine,* 311 N.W.2d at 293–94 (holding Sixth Amendment authority for furnishing investigative services at public expense without regard to whether indigent represented by private counsel); *State v. Jones,* 707 So.2d 975, 977–78 (La.1998) (holding although indigent defendant was represented by counsel retained by defendant's father, he was eligible for state funded necessary services); *State v.*

*Huchting,* 927 S.W.2d 411, 419 (Mo.Ct.App. 1996) (noting retention of private counsel does not cause a defendant to forfeit his eligibility for state assistance in paying for expert witness or investigative expenses); *Manning,* 560 A.2d at 698–99 (holding indigent defendant could not be denied state-funded expert services because he was represented by private counsel, whether counsel was pro bono or paid by third party); *Widdis v. Second Jud. Dist. Ct.,* 114 Nev. 1224, 968 P.2d 1165, 1168 (1998) (holding criminal defendant with private counsel constitutionally entitled to reasonable defense services at public expense based on defendant's showing of indigency and need for the services); *Burns,* 4 P.3d at 800–02 (holding statutory right to publicly funded expert assistance under statute could not be conditioned upon accepting court-appointed counsel in lieu of private counsel retained at father's expense); *State ex rel. Rojas v. Wilkes,* 193 W.Va. 206, 455 S.E.2d 575, 577 (1995) (holding that funds with which defendant's family retained private counsel irrelevant to defendant's right as indigent to have necessary expert assistance provided at state's expense).

{62} I respectfully submit that the majority opinion either overlooks or contravenes the public policies discussed above. For this additional reason, I respectfully dissent.

## CONCLUSION

{63} The majority concludes that *Subin* is the controlling authority in this case. Majority Opinion ¶ 28. I disagree. *Subin* dealt with a narrow issue: whether the district court had the authority to order the Department to pay expert witness fees for an indigent defendant who was not its client. *Subin,* 2001–NMCA–105, ¶ 4, 131 N.M. 350, 36 P.3d 441. Here, Brown has *not* limited his claim to entitlement of Department funds. As a result, *Subin* does not control the issue presented in this case. Furthermore, while *Subin* held that the district judge had no authority to order the Public Defender Department to pay expert witness fees for an indigent defendant represented by counsel paid for by family members, it then affirmed the order. Accordingly, none of the parties in *Subin* sought a review of its reasoning in the Supreme Court even though Judge Bus-

tamante dissented because they all received what they wanted: the defendant got his expert witness, and the Public Defender Department's position was sustained. I respectfully submit, for the reasons stated herein, that *Subin* should be overruled.

{64} I also conclude that an indigent criminal defendant is statutorily entitled under the Indigent Defense Act to receive the basic tools for an adequate defense upon a showing of need, notwithstanding the fact that he or she is represented by private counsel pro bono for no fee.

{65} Brown argued in the district court and in this Court that the expenses and services he seeks are necessary. However, the district judge never ruled whether they are necessary. Brown must be provided with the opportunity to establish that the expert assistance he requests is necessary. *See Turner*, 90 N.M. at 82, 559 P.2d at 1209 (observing that entitlement to expenses depends upon a showing of necessity). If Brown succeeds in making such a showing, he should be entitled to the requested assistance at public expense. As indicated above, funding for this purpose should presumptively come from appropriations to the district court. *See* § 31–16–8(A)(2). However, the district judge is not limited to ordering payment from such appropriations if they do not exist. *See Quintana*, 115 N.M. at 578, 855 P.2d at 567 (stating that courts may be required to make appropriate order when necessary to safeguard a defendant's constitutional or statutory rights); *Wilson*, 574 So.2d at 1339–40 (recognizing inherent authority of courts to provide adequate funding for their operations in cases where the legislature fails to so provide but refusing to apply that rule to indigent defense attorney fees set by legislature under the facts of that case); *Wilke*, 734 N.E.2d at 818 (acknowledging rule that courts have inherent authority to insure necessary funding for necessary operations); *see also Subin*, 2001–NMCA–105, ¶ 13, 131 N.M. 350, 36 P.3d 441 (stating "in appropriate cases, courts as guardians of the constitution or as interpreters of statutes may well order executive departments to make funding available as needed"). Should the district court conclude that funds have not been appropri-

ated to it for such purposes, and should alternative appropriations prove unavailable, the necessary funds should be provided from the budget of the district court. *See State v. Duran*, 91 N.M. 35, 36–37, 570 P.2d 36, 37–38 (Ct.App.1977) (observing that where the district court determines that appropriations to it for witness fees have been exhausted, the defendant must establish that alternative sources of funding do not exist before the district court will be required to make funds available).

{66} The ruling of the district should be reversed, and the case remanded for enforcement of the operative, unchallenged order that Brown "is entitled to all services ... normally provided by the State of New Mexico to an indigent defendant." Since the majority disagrees, I respectfully dissent.